IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Tianna Pressley,<br><br>Plaintiff,<br><br>v.<br><br>Lexington Regional Rehabilitation Hospital (Ernest Health), Jessica Stricklin (in her individual capacity), Kristin Manske (in her individual capacity), Lisa Baird (in her individual capacity)<br><br>Defendant. | C/A No.:<br><br>COMPLAINT<br>Jury Trial Requested |

## INTRODUCTION

Plaintiff, by and through their undersigned counsel, hereby brings the following Causes of Action for Race Discrimination/Racially Hostile Work Environment in violation of 42 U.S.C. §1981, Breach of Contract, Breach of Contract with Fraudulent Intent, Violation of FMLA, Retaliation in violation of Title VII of the Civil Rights Act of 1964, Negligent Supervision, and Civil Conspiracy, against Defendant Lexington Regional Rehabilitation Hospital (Ernest Health or Lexington), CEO Jessica Stricklin, Kristin Manske and Lisa Baird based on the following allegations.

## ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343, and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal statutes. This Court also has pendant, ancillary, and supplementary jurisdiction over so much of this action as it is based on state law.
2. Venue is proper in the Columbia Division because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where Defendant does business and may be found.

## PARTIES

3. Plaintiff is a State of South Carolina citizen and resides in Lexington County.
4. Defendant Lexington Regional Rehabilitation Hospital (Ernest Health or Lexington) is a business entity operating its hospital facility in Cayce, SC.
5. During Plaintiff's employment Defendant acted through its managers, supervisors, Human Resources personnel, and executive officers, including but not limited to Raymond Gadomski, Roxanna Schmidt, and Jessica Stricklin.
6. Upon information and belief, Defendant Jessica Stricklin is a citizen of South Carolina and resides in this Judicial District.
7. Upon information and belief, Defendant Lisa Baird is a citizen of South Carolina and resides in this Judicial District.

## FACTS

8. Plaintiff is a 36-year-old African American Female who has was employed with the Defendant starting on March 13, 2023.

9. Plaintiff previously worked for Midlands Regional Rehabilitation Hospital from 2020 until 2023.
10. Plaintiff worked at Defendant Lexington from 2023 to 2026.
11. Plaintiff's previous supervisors were Raymond Gadomski (WM) who recommended Plaintiff to the position of Director of Pharmacy based upon her excellent performance.
12. Commencing with March 13, 2023, until August of 2025, Plaintiff worked under the supervision of Roxanna Schmidt (HF) with no issues involving her job performance.
13. Plaintiff's relationship with Ms. Schmidt and the staff she supervised was excellent and the workplace environment was good.
14. Ms. Schmidt resigned in good standing with Lexington, praising Plaintiff for being a valuable team member.
15. In August of 2025, a new CEO, Jessica Stricklin (WF) was hired to replace Ms. Schmidt.
16. Immediately upon meeting Ms. Stricklin, it became apparent to Plaintiff that Ms. Stricklin had no desire to foster a team relationship with Plaintiff to manage the Pharmaceutical Division within the hospital, based upon Plaintiff's race, African American.
17. Plaintiff, having worked with Lexington for five years interacted with Mr. Gadomski, Caucasian Male, and Ms. Schmidt, Hispanic Female, with no issues regarding their respective racial ethnicities.
18. In addition, Plaintiff supervises a diverse staff and administers her job and responsibilities in an equitable manner towards her staff.

19. Upon Ms. Stricklin's hire, she began a pattern and practice of racial animosity towards Plaintiff through subversion of Plaintiff's supervisory duties by meeting with Plaintiff's staff and soliciting negative comments or feedback from Plaintiff's subordinates.
20. In addition, seeking to undermine Plaintiff's managerial role and relationship with her subordinate staff, Stricklin convened a meeting utilizing an HR representative to survey Plaintiff's staff for negative feedback.
21. Defendant Stricklin as CEO launched and has carried on a continuous pattern of racial harassment against Plaintiff, which resulted in Plaintiff experiencing emotional distress, anxiety, loss of sleep, and depression.
22. As a result of Defendant Stricklin's racial animus, Plaintiff was forced to take FMLA commencing on October 20, 2025, until November 30, 2025.
23. Upon Plaintiff's return from FMLA on December 1, 2025 arriving to work, Defendant Stricklin in an effort to humiliate Plaintiff, ordered Plaintiff to move from her manager's office where she had worked since October 2024, back into the Pharmacy.
24. Defendant Stricklin's efforts are a direct pretextual strategy to force Plaintiff to resign her position due to Stricklin's racial animosity towards Plaintiff as an African American Administrator.
25. Plaintiff in an effort to resolve the racially charged efforts of Defendant Stricklin, reached out to Kristin Manske (WF) to no avail.
26. Ms. Manske was made fully aware of Plaintiff's concerns and met with both managers on December 3, 2025.
27. Following that meeting of December 3, 2025 to Plaintiff's shock and dismay, Defendant Stricklin intensified her racial bias against Plaintiff between December 3, 2025 and

December 25, 2025, resulting in Plaintiff having to take FMLA leave due to increased anxiety and depression from the racially hostile work environment created by Defendant Stricklin.

28. Defendant took FMLA leave from December 25, 2025 through January 25, 2026. Intermittent FMLA approval was in effect.
29. After she returned from FMLA, Plaintiff participated in a late-January meeting concerning medication availability, involving Shamika Clinton and others.
30. Upon her return, Plaintiff continued to receive increased scrutiny on her decisions and her authority as Director of Pharmacy was being undermined as decisions involving her Department were handled by others.
31. On January 30, 2026 Defendant Stricklin questioned the pharmacy schedule and on-call coverage was added.
32. On February 3, 2026 Plaintiff received a verbal warning concerning the October-December 2025 scorecards.
33. Part of the period covered by the discipline overlapped with Plaintiff's first continuous FMLA leave which ran October 20- November 30, 2025.
34. The discipline occurred approximately eight days after Plaintiff's January 26, 2026 return from her second FMLA leave.
35. On February 4, 2026, a formal compliance complaint was made against Defendant CEO Jessica Stricklin.
36. On February 4, 2026 at approximately 3:30pm Defendant Stricklin entered pharmacy IV/sterile-compounding areas without personal protective equipment (PPE) that was required.

37. Plaintiff raised concerns regarding the PPE.

38. Defendant Stricklin reportedly stated that the Vice President of Pharmacy had indicated that PPE was not required.

39. Shamika Clinton and as needed pharmacist Janesha Williams were present and photographs were taken.

40. Therefore, Plaintiff is a victim of racial discrimination, a racially hostile work environment, and retaliation based upon her race for having exhausted her administrative remedies through Defendant Lexington's internal administrative procedures.

41. Plaintiff alleges that the actions of Defendant's agent, Stricklin, and the condonation of Stricklin's actions by the Defendant Lexington Hospital Administration are in direct violation of Title VII of the 1964 Civil Rights Act as Amended, Section 1981 of the Civil Rights Act and other Federal and State Acts.

## FIRST CAUSE OF ACTION

***Race Discrimination, Racially Hostile Work Environment against Defendant Lexington.***

42. Plaintiff reiterates and fully incorporates each and every assertion set forth above as if repeated verbatim herein.

43. Plaintiff is a member of a protected class on the basis of her Race (African American) and Sex (Female).

44. Plaintiff alleges that Defendant Lexington, through its agents, Defendant Stricklin initiated discriminatory and retaliatory practices against Plaintiff based upon her Race, including but not limited to:

    a. Subverting Plaintiff's supervisory duties

    b. Soliciting negative comments or feedback from Plaintiff's subordinates

c. Moving Plaintiff from her manager's office where she had worked since October 2024, back into the Pharmacy

d. Intensified racial bias between December 3, 2025 to December 25, 2025 from Defendant Stricklin

45. Plaintiff was subjected to Race Discrimination, a Racially Hostile Work Environment, and Retaliation on the basis of her Race, resulting from racially hostile treatment by Defendant Stricklin, which Lexington condoned in violation of Section 1981.

46. Upon information and belief, Plaintiff's Caucasian colleagues of similar title, responsibility, and authority were not forced to be subjected to such racial hostility and undermining of their directives as Plaintiff.

47. Furthermore, none of Plaintiff's Caucasian colleagues of similar title, responsibility, and authority were subjected to such hostile and racial treatment, and Defendant Lexington made no effort to protect Plaintiff from such an environment orchestrated by Defendant Stricklin.

48. Defendant Lexington was well-aware of Plaintiff's concerns of workplace harassment and racial animosity by Defendant Stricklin.

49. Upon information and belief, Defendant Lexington breached its own policies and procedures through its Handbook.

50. Further, Plaintiff alleges that Defendant Lexington, through its agent Defendant Stricklin, initiated racially discriminatory and racially hostile practices against Plaintiff that were reckless and wanton, including:

a. Continuing to permit the deliberate undermining and retaliation of Plaintiff's authority at the hands of Defendant Stricklin.

b. By continuing to allow the Defendant's racially hostile, usurpatory, and egregious practices while Plaintiff's similarly situated Caucasian colleagues were exempt from such treatment.

51. By knowingly allowing such blatant and pervasive racial hostility, retaliation, and discrimination to exist, Defendant Lexington condoned the same; and Plaintiff's job performance and effectiveness were negatively impacted consequently.

52. Further, Defendant Lexington retaliated against Plaintiff for attempting to resolve the racially charged efforts of Defendant Stricklin through the administrative structure at Defendant Lexington and also for using her FMLA leave.

53. But for Defendant Lexington's conduct, by and through Defendant Stricklin, Plaintiff would not have been forced to endure Race Discrimination, a Racially Hostile Work Environment and Retaliation.

54. By failing to protect Plaintiff from the Defendants' racially motivated hostility and retaliation, Defendant Lexington acted with malice and reckless indifference to Plaintiff's federally protected rights set out under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C §2000, et seq., Section 1981).

55. As a result of Defendants' racially discriminatory conduct, accompanied by Plaintiff's continuous and ongoing exposure to the same, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff believes she should be awarded actual and punitive damages against the Defendants due to their unlawful discriminatory treatment of Plaintiff under Section 1981.

## SECOND CAUSE OF ACTION

***Breach of Contract as to Defendant Lexington***

56. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

57. Plaintiff and Defendant entered into a binding and legal contract for employment with Lexington. Plaintiff accepted the offer of employment and agreed to fulfill the duties of her position in exchange for valuable consideration, her salary, and the Defendant's guarantee that she would be protected from Racial Discrimination, Retaliation, and a Racially Hostile Work Environment.

58. Defendant maintained an employment Handbook and mandatory policies and procedures that included the Plaintiff's job description, which set out conditions under which the Plaintiff performed in an exemplary manner.

59. At all times during her employment, Plaintiff relied on the promises contained in the Defendant's Handbook, policies, procedures, and governing documents.

60. Defendant breached its employment contract with Plaintiff by failing to protect Plaintiff from Race Discrimination, Retaliation, and a Racially Hostile Work Environment at the hands of Defendant Stricklin.

61. Defendant unjustifiably failed to perform its contractual duties by racially discriminating against Plaintiff, retaliating against Plaintiff for her advocacy a harassment free workplace from its agent Stricklin.

62. Further, Defendant Lexington breached its contractual policies and procedures by failing to treat Plaintiff equally to its Caucasian employees as stated more fully above.

63. Defendant Lexington and its agents had a responsibility to ensure that Plaintiff would not be subjected to Race Discrimination, Retaliation, and a Racially Hostile Work Environment.

64. Instead, Defendant permitted its agents to not only discriminate against Plaintiff but also allowed them to retaliate against Plaintiff when she properly advanced concerns about racial animosity in the workplace. Moreover, Lexington failed to treat Plaintiff similarly to her Caucasian counterparts, all in violation of the contractual guarantees provided to Plaintiff by Defendant in its Handbook and other contractual documents.

65. As a result of the Defendant Lexington's breach of contract, the Plaintiff has suffered actual, compensatory, physical, mental, emotional, and consequential damages stemming from the breach and other such damages as are allowed.

## THIRD CAUSE OF ACTION

***Breach of Contract Accompanied with Fraudulent Intent as to Defendant Lexington***

66. Plaintiff reiterates every allegation contained in the preceding paragraphs as if set forth verbatim herein.

67. Defendant, by and through their agents, has failed to fulfill their obligation under their promissory and mandatory terms requiring good faith business dealing, which form a contract with Plaintiff beyond the at-will employment relationship.

68. Defendant, by and through its agents, has breached the terms thereof by reason of an intentional design to defraud Plaintiff.

69. Defendant fraudulently and untruthfully attempted to conceal its true motives for its racial treatment of Plaintiff by convening meetings with Plaintiff's subordinates soliciting negative comments or feedback.

70. In fact, Plaintiff asserts that Defendant Stricklin worked to undermine Plaintiff's authority based on her race and responsibilities to create a pretextual reason to mistreat Plaintiff at the workplace.

71. Upon information and belief, Plaintiff asserts that Plaintiff's taking FMLA leave and reporting the workplace treatment she received to Kristin Manske was a catalyst to the race discrimination, retaliation, and racially hostile work environment Plaintiff had to endure.

72. As a result, Defendant's actions, Plaintiff has suffered damages in the form of lost wages, income, and benefits, emotional distress, mental anguish, loss of enjoyment of life, embarrassment, humiliation, as well as consequential and other damages.

73. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for public policy, and the State and Federally protected rights of Plaintiff. Therefore, Plaintiff is informed and believes she is entitled to recovery of liquidated and punitive damages from Defendant.

## **FOURTH CAUSE OF ACTION**

***Violation of the Family Medical Leave Act as to Defendant Lexington***

74. Plaintiff reiterates and fully incorporates each and every assertion set forth above as if repeated verbatim herein.

75. Plaintiff is a covered employee as defined under the Family Medical Leave Act (FMLA).

76. On October 20, 2025 took FMLA leave until November 30, 2025.

77. Thereafter, Plaintiff experienced retaliation by being forced to move from her manager's office, where she worked since 2024, back into the Pharmacy.

78. As a retaliatory result of Plaintiff's internal complaints and request for leave, Plaintiff's issues with her work environment were left unanswered, forcing her to endure a racially hostile work environment.

79. Therefore, Plaintiff respectfully requests this Court to grant all damages as appropriate in this Action, including punitive damages.

## FIFTH CAUSE OF ACTION

***Retaliation in Violation of Title VII of the Civil Rights Act of 1964 as to Defendant Lexington***

80. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

81. Plaintiff objected to and protested the violations of her Federally Protected Rights within the Defendant's administrative structure, and later, to the Equal Employment Opportunity Commission (EEOC).

82. After Plaintiff took FMLA leave from October 20, 2025 until November 30, 2025, Defendant Stricklin retaliated against her by ordering her to move from her manager's office where she had worked since October 2024, back to the Pharmacy.

83. Plaintiff made an effort to resolve the racially charged efforts of Stricklin and Plaintiff reached out to Kristin Manske. After Manske met with both managers, Stricklin retaliated against her by intensifying her racial bias against Plaintiff between December 3, 2025 and December 25, 2025.

84. Accordingly, Plaintiff is entitled to compensatory and punitive damages in the nature of the value of her lost wages and benefits, front pay, together with interest thereon, as well as liquidated damages, and her reasonable attorney's fees for the bringing of this action.

## SIXTH CAUSE OF ACTION

***Negligent Supervision as to Defendant Lexington***

85. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.
86. Defendant Lexington failed to use due care in supervising its employees, specifically Defendant Stricklin.
87. Defendant Lexington, after verbal complaints by Plaintiff, permitted Defendant Stricklin to engage in intensified racial bias towards Plaintiff.
88. Defendant Lexington knew or should have known of the need to exercise control of Defendant Stricklin by intervening to deescalate the obvious hostility of Defendant Stricklin towards Plaintiff.
89. Defendant Lexington had more than ample opportunity to intervene and exercise control over the escalating situation, as Plaintiff took several weeks of FMLA leave during her time working for Defendant Lexington.
90. Defendant Lexington's actions were intentional, reckless, malicious, willful and wanton, and with utter disregard for Plaintiff's rights.
91. As a direct and proximate result of Defendant Lexington's unlawful actions, Plaintiff has suffered substantial embarrassment, emotional distress, mental anguish, lost wages, consequential and other damages. Moreover, due to the egregiousness of Defendant Lexington's conduct, Plaintiff is informed and believes she is entitled to the recovery of punitive damages.

## SEVENTH CAUSE OF ACTION

***Civil Conspiracy as to Defendant Stricklin, Defendant Manske and Defendant Baird***

92. Defendant Baird received complaints officially from Plaintiff regarding harassment and retaliation by Plaintiff against her.

93. Defendant Baird and Defendant Manske received these reports October 13, 2025 and on December 1, 2025.

94. Kristin Manske received another report on December 2, 2025.

95. Within a close temporal proximity of those complaints being filed with those Defendants, they colluded with Defendant Stricklin primarily for the benefit of creating a hostile work environment for Plaintiff.

96. Plaintiff was excluded from key communications, which her job required. She also was provided with compressed audit deadlines and heightened security, and mistreatment on the job as it related to her ability to do her job.

97. These actions come as a result of Defendant Baird and Defendant Manske working in concert with Defendant Stricklin to create pretextual basis for disciplining Plaintiff and eventually for creating a hostile work environment that led to the separation of employment of Plaintiff from Defendant Lexington.

98. Defendant Baird, Defendant Manske and Defendant Stricklin were active in their concerted effort because at no point did they address their concerns as the Handbook Policy within the company directs and obligates Defendant Manske and Defendant Baird to investigate.

99. Defendant Manske and Defendant Baird abdicated their right to investigate because Defendant Stricklin was close to them and friends with them.

100. The basis of the conspiracy is that the Defendant Baird, Defendant Manske and Defendant Stricklin worked together to do harm to Plaintiff.

101. The natural consequence of Defendants Baird, Defendant Manske, and Defendant Stricklin's combined actions caused special damages to Plaintiff apart from any other damages pleaded herein. Specifically, the acts in furtherance of this conspiracy as alleged have and will continue to cause Plaintiff special damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and further non-pecuniary losses.

102. Consequently, Plaintiff seeks an award for damages in an amount to be proven at trial for all losses proximately caused by Defendants Baird, Defendant Manske and Stricklin's conspiracy.

## JURY TRIAL REQUESTED

103. Plaintiff respectfully requests a jury trial.

## PRAYER FOR RELIEF

***WHEREFORE***, Plaintiff prays that this Honorable Court declare that Defendant's herein complained of actions violated the rights guaranteed to Plaintiff, and issue its judgment as follows:

104. Declaring the actions complained of herein illegal;

105. Issuing an injunction enjoining Defendants, their agents, employees, successors, attorneys and those acting in concert or participation with Defendant from engaging in the unlawful practices set forth herein, as well as any other employment practices shown to be in violation of State and/or Federal law;

106. Awarding Plaintiff compensatory and punitive damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of Defendants' unlawful actions; including, but not limited to, mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay and future earnings with cost-of-living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

107. Awarding Plaintiff her costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

108. Granting such other and further relief as may be just and necessary to afford complete relief to Plaintiff, and in the discretion of this Honorable Court.

Respectfully Submitted,
s/Donald Gist

Donald Gist (13098)
***GIST LAW FIRM, P.A.***
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

***Attorney for Plaintiff***

September 2, 2026